UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRIYA HARRIRAM,

                              Plaintiff,

                    v.

CITY UNIVERSITY OF NEW YORK,
LEHMAN COLLEGE, SUSAN E. EBERSOLE,
and BRIDGET BARBERA,

                              Defendants.

---

No. 22-CV-9712 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

        This is one of numerous actions pro se Plaintiff Priya Harriram has filed against the City

University of New York ("CUNY") and its employees.  The Court assumes the parties' familiarity

with the factual background and procedural history of Harriram's other lawsuits and summarizes

only the most pertinent facts here.  Harriram brings this action against Defendants CUNY, Lehman

College, Susan Ebersole, and Bridget Barbera for violations of Title VII, Title IX, 42 U.S.C. §

1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human

Rights Law ("NYCHRL").  She primarily alleges that Defendants retaliated against her due to her

previous lawsuits, including by refusing to hire her, denying her entrance to a business school

event, and preventing her from taking in-person math courses at Lehman College.  Now before the

Court is Defendants' motion to dismiss the Complaint.  For the reasons that follow, the motion is

granted in part and denied in part.  Defendants' motion to dismiss is granted as to all claims except

for: (1) Harriram's retaliation claims against Defendants CUNY and Barbera based on a failure-

to-hire theory, brought under Title VII, Title IX, the NYSHRL, and the NYCHRL; (2) her Title

IX retaliation claim against CUNY for denying her access to the business school event; and (3)

her Title IX retaliation claim against CUNY for preventing her from taking math courses at Lehman College.

## FACTUAL BACKGROUND

The following facts are drawn from Harriram's Complaint and the attached exhibits which, on a motion to dismiss, the Court must assume to be true.  *See Lynch v. United States*, 952 F.3d 67, 74-75 (2d Cir. 2020); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, … a complaint [includes] any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").[1]

Harriram, a student and former CUNY employee, applied to work as a notetaker for the disability office at Lehman College in August 2022.  Dkt. No. 2 ("Compl.") at 1.[2]  According to Harriram, a CUNY employee "confirmed" to her that she would be hired and gave her HR documents to fill out.  Two days later, however, she learned that the disability office "could not hire" her because "HR was told by the Legal Department of Lehman College not to."  *Id.*  In particular, the disability office employee sent an email to another CUNY employee on August 29, 2022, stating that "I am in the process of hiring Priya Harriram as a Student Aide [and … we] would like her start date to be 9/6 if possible."  *Id.*, Ex. 3.  Soon after, the disability office employee reversed course, informing Harriram that CUNY "c[ouldn't] hire" her.  *Id.*  Harriram responded to the employee, expressing "surprise" and asking for contact information for the individual who rejected her application.  *Id.*, Ex. 4.  The employee replied: "The person spoke with my supervisor.

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

[2] Harriram alleges that she was a student at Lehman College from 2013 to 2018, and that she re-enrolled in pursuit of a second undergraduate degree in the fall 2022 academic term, which began in August 2022.  *See* Compl., Ex. 17; *Harriram v. Fera* ("*Harriram II*"), No. 22-CV-3356 (RA), 2023 WL 4353824, at *1 (S.D.N.Y. June 30, 2023).

She was from the legal office at Lehman.  I do not know her name." *Id.*  Harriram now asserts that Defendant Barbera "is the official in the Legal Department who … caused [her] to not be hired." *Id.* at 1.

Harriram principally alleges that Defendants refused to hire her in retaliation for her other lawsuits against CUNY.  In 2021, she filed suit against CUNY and various individual defendants after being denied a job in Lehman College's math department.  *See Harriram v. Fera* ("*Harriram I*"), No. 21-CV-3696 (RA), 2024 WL 1020266 (S.D.N.Y. Mar. 8, 2024).  There, Harriram asserted that she was denied employment in February 2020 because she refused the sexual advances of a math professor.  *Id.*  The Court dismissed her retaliation, discrimination, and hostile work environment claims for failure to state a claim.  *Harriram I* at *3-6.  On April 25, 2022, Harriram again filed suit against many of the same defendants.  *See Harriram II*, 2023 WL 4353824.  In *Harriram II*, which concerned her November 2021 termination from her position as a college assistant at Lehman College, the Court dismissed Harriram's claims as barred by res judicata.[3] Harriram filed this lawsuit six months later, alleging that "[i]n retaliation for participating in the protected activity of filing a lawsuit against the College about employment discrimination," she is unlawfully "being blacklisted from hire."  Compl. at 1.

Harriram also maintains that Defendants took other retaliatory actions against her due to her previous lawsuits.

In September 2022, Harriram was denied entry to the launch event of the Lehman School of Business, which she alleges was open to CUNY students and the public.  *Id.* at 1-2.  Several days before the event, Harriram received an email confirming that she had successfully filled out

---

[3] Harriram had previously lost an Article 78 case in state court over the same allegations.  *Id.*; *see Harriram v. Washington, Barbera, Lehman College, City University of New York*, Index No. 212/2022E (N.Y. Sup. Ct. Bronx Cnty. Jan. 18, 2022).

an RSVP to attend.  *Id.*, Ex. 9.   Two days later, she received an email from Defendant Ebersole, a Lehman College administrator.  *Id.*, Ex. 7.  Ebersole explained to Harriram that she was "not up to date with respect to [her] alumni dues, [was] not considered an active member of the Lehman Alumni Association, and as such, [her] invitation was issued in error."  *Id.*  Ebersole also stated that the event was "open for all faculty and staff but not for the student body at large."  *Id.*  Six minutes later, a CUNY official sent an email to ten other CUNY email addresses, stating: "FYI & ATTENTION [Priya Harriram] is not allowed on campus please alert all Gates."  *Id.*  Harriram asserts that Ebersole made "false statements" with respect to why she was not permitted at the event, and that her actions were "capricious and arbitrary" because, contrary to Ebersole's assertions, both CUNY students and alumni attended that event.  *Id.* at 3; *see id.*, Ex. 6.

Later that month, Harriram also received several "no contact" orders from an official at Lehman College, informing her that she could face "suspension or expulsion" if she "contact[s] in any manner" several individuals involved in her prior litigation, including Professor Joseph Fera, Professor Brian Wynne, Lehman College President Fernando Delgado, Eric Washington, Dawn Ewing-Morgan, and Defendant Barbera.  *Id.*, Exs. 19, 20.  One such order explained that "[t]he Office of Student Affairs [was] made aware that there is litigation involving yourself and the above-named parties and as a result you are to have no communication or contact with the parties while on campus."  *Id.*  The no contact orders further informed Harriram that she is "not permitted to take any in-person courses in the Math Department" at Lehman College and that "the College will facilitate [her] taking … courses at other CUNY institutions."  *Id.*, Ex. 18.  Although she asked for an accommodation to take math courses "when Professor Fera and Professor Wynne [are] not there," CUNY rejected her request.  *Id.* at 4.  A Lehman official also told Harriram that the no contact orders were "for all the parties involved" and a "part of the Student Affairs process," and

stated that "the College can use this tool as an intermediary measure to de-escalate campus issues and is used as one of the tools in lieu of more serious measures such as any kind of probation or campus removal." *Id.*, Ex. 23.  The official also noted that this action was taken pursuant to "CUNY's Article XV Disciplinary policy and the Rules for Public Order (Henderson Rules)." *Id.*, Ex. 17.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To make that determination, the Court must "accept as true all factual allegations … but [is] not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). But even pro se litigants must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999).  Courts may, for example, consider matters of public record, including state court documents and decisions.  *See Quire v.*

*City of New York*, 2021 WL 293819, at *3 (S.D.N.Y. Jan. 28, 2021); *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

## DISCUSSION

Defendants now bring a motion to dismiss, arguing that Lehman College is not a proper party in this case, that some of Harriram's claims are barred by sovereign immunity, and that she otherwise fails to plead any facts suggesting discriminatory or retaliatory animus.[4]

### I.      Claims Against Defendant Lehman College

As an initial matter, all claims against Lehman College are dismissed because "Lehman College is a senior college within CUNY and has no separate legal existence." *Ross v. State of New York*, 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016); *see Harriram I* at *1 n.1.

### II.     Claims Barred by Sovereign Immunity

Harriram asserts several claims under the NYSHRL and the NYCHRL, alleging discrimination and retaliation by Defendants. Harriram maintains, for instance, that Defendants refused to hire her "as a form of discrimination and retaliation for having an existing lawsuit." Compl. at 1. Defendants argue that these claims are barred by sovereign immunity. To the extent Harriram seeks to bring NYSHRL and NYCHRL claims against CUNY and against Defendants Barbera and Ebersole in their official capacities, these claims are dismissed.

---

[4] Defendants also assert that Harriram's opposition brief "fails to address almost all" of their arguments and that Harriram "has abandoned [her] claims and the Court should dismiss them with prejudice." Dkt. No. 32 ("Def. Reply Br.") at 4. The Court declines to do so on this basis. A pro se plaintiff should not be presumed to have abandoned her claims because she did not address a defendant's specific arguments. *See Tsismentzoglou v. Milos Estiatorio Inc.*, 2019 WL 2287902, at *2 n.3 (S.D.N.Y. May 29, 2019). "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

The NYSHRL provides that it is unlawful for an employer to discriminate against an employee or prospective employee because of her gender identity, race, national origin, or other protected class.  N.Y. Exec. Law § 296(1)(b).  The statute also proscribes an employer from "retaliat[ing] against" an employee because she has "filed a complaint" against that employer.  *Id.* § 296(7).  The NYCHRL similarly makes it unlawful for an employer to "refuse to hire or employ" individuals on the basis of race, gender, or national origin, N.Y.C. Admin. Code § 8–107(1)(a), or to retaliate against them for "fil[ing] a complaint" against the employer.  *Id.* § 8–107(7).

"Unless a State has waived its Eleventh Amendment immunity … a State cannot be sued directly in its own name regardless of the relief sought."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  New York State has not consented to suit under either NYSHRL or NYCHRL in federal court.  *See Purdie v. City Univ. of New York*, 2015 WL 129552, at *4 (S.D.N.Y. Jan. 8, 2015).  CUNY is considered an "arm of the state," which means that "suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment."  *Clissuras v. City Univ. of New York*, 359 F.3d 79, 83 (2d Cir. 2004).  Accordingly, Harriram's NYCHRL and NYSHRL claims against CUNY are dismissed.  Because sovereign immunity "extends to state employees acting in their official capacities," *Edwards v. N.Y. State Off. of Mental Health*, 2017 WL 666227, at *9 (E.D.N.Y. Feb. 20, 2017), these claims are also dismissed against Defendants Barbera and Ebersole in their official capacities.[5]

---

[5] For the same reasons, Harriram's § 1981 claims against CUNY and Defendants Barbera and Ebersole in their official capacities are also dismissed.  "Congress did not abrogate states' sovereign immunity for 42 U.S.C. § 1981, nor has New York waived immunity for those claims." *Harriram v. Fera*, No. 21-CV-3696 (RA), 2023 WL 2647856, at *7 (S.D.N.Y. Mar. 27, 2023).  Harriram's Title VII and Title IX claims are not barred by sovereign immunity, however, because Congress did abrogate state sovereign immunity under those statutes. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 451 (1976); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

### III.   Discrimination Claims

Harriram also asserts that Defendants did not hire her as a notetaker "as a form of discrimination" because of her Trinidadian heritage and Asian race.  Compl. at 1, 5.  Defendants argue that Harriram has not adequately stated a claim because she fails to plausibly allege a minimal inference of discrimination.  *See* Dkt. No. 25 ("Def. Br.") at 9-10.  The Court agrees.

### A.  Title VII Discrimination Claim Against CUNY

Title VII makes it unlawful for an employer "to fail or refuse to hire … any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e–2(a)(1).  To defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  At this stage, the question is "whether the well-pleaded factual allegations plausibly give rise to a [minimal] inference of unlawful discrimination."  *Id.*

Here, although Harriram alleges that she is an Asian woman of Trinidadian heritage, *see* Compl. at 3, she pleads no facts to suggest that these—or any—protected characteristics were a motivating factor in Defendants' decision not to hire her.  Because she does not raise a minimal inference of discrimination, Harriram's discrimination claim must be dismissed.[6]

---

[6] To the extent Harriram seeks to bring § 1981 claims against Defendants Barbera and Ebersole in their individual capacities, these claims are also dismissed.  "The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 as constitute a claim under Title VII."  *White v. Eastman Kodak Co.*, 368 F. App'x 200, 202 n.1 (2d Cir. 2010).  Further, to the extent Harriram intends to bring a hostile work environment claim under Title VII, this claim is also dismissed because she does not assert that she was employed by CUNY during the relevant period.  *See Littlejohn v. City of New York*, 795 F.3d 297, 320-21.  Finally, Harriram cannot bring Title VII claims against Defendant Barbera or Ebersole

**B. NYSHRL and NYCHRL Discrimination Claims Against the Individual Defendants**

Both the NYSHRL and the NYCHRL also make it unlawful for employers to discriminate against prospective employees on the basis of protected characteristics, including race, gender, and national origin. *See* N.Y. Exec. Law § 296(1)(b); N.Y.C. Admin. Code § 8–107(1)(a). As discussed above, Harriram's NYSHRL and NYCHRL claims against CUNY and against Defendants Barbera and Ebersole in their official capacities are barred by sovereign immunity. To the extent Harriram seeks to bring NYSHRL and NYCHRL claims against them in their individual capacities, these also fail. First, claims under the NYSHRL are judged by the "same standards" as their federal counterparts in Title VII, which fail for the reasons stated above. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020). Second, although the pleading standard for the NYCHRL is "more liberal" than Title VII, to succeed a plaintiff must still "allege facts giving rise to an inference of discrimination based on [a protected characteristic] to prevail." *Moore v. Verizon*, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016). She fails to do so. Accordingly, Harriram's remaining NYSHRL and NYCHRL discrimination claims are dismissed.

**IV.  Retaliation Claims**

Harriram next alleges that Defendants retaliated against her for bringing two prior lawsuits against CUNY: *Harriram I* and *Harriram II*. Compl. at 1. According to Harriram, Defendants' retaliation manifested itself three ways: she was (1) denied the notetaking position for which she applied; (2) prevented entrance to the business school event; and (3) forbidden from attending math courses at Lehman College. *Id.* at 1-4. The Court considers each in turn.

---

because "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).

### A.  Notetaker Job Application

Harriram first asserts that CUNY did not hire her as a notetaker "as a form of … retaliation for having an existing lawsuit."  *Id.* at 1.  She also alleges that "[i]n retaliation for participating in the protected activity of filing a lawsuit against the College about employment discrimination," she is "now being blacklisted from hire."  *Id.*  Reading her Complaint "to raise the strongest arguments [it] suggest[s]," *McLeod*, 864 F.3d at 156, the Court finds that Harriram has adequately stated retaliation claims against Defendants CUNY and Barbera based on a failure-to-hire theory, brought under Title VII, the NYSHRL, the NYCHRL, and Title IX.

### 1.  Title VII Failure-to-Hire Retaliation Claim Against CUNY

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment … because [that individual] opposed any [unlawful employment] practice" or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e–3(a).  For a retaliation claim to prevail at this stage, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against [her], (2) because [she] has opposed any unlawful employment practice."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).  Under the first prong, a failure to hire constitutes an adverse employment action.  *Giurca v. Good Samaritan Hosp.*, 2023 WL 254611, at *10 (S.D.N.Y. Jan. 18, 2023).  The second prong requires the plaintiff to "plausibly allege that the retaliation was a but-for cause of the employer's adverse action."  *Vega*, 801 F.3d at 90.  "But for" causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

First, Harriram plausibly alleges under Title VII that CUNY took an adverse employment action against her by refusing to hire her. *See Giurca*, 2023 WL 254611, at *10. Second, Harriram plausibly alleges that CUNY failed to hire her "because of" her prior lawsuits against it. Through the Complaint and its attached exhibits, Harriram avers that CUNY's human resources department had accepted her application to be a notetaker and was in the process of completing and approving her onboarding forms. *See* Compl. at 1. Indeed, a CUNY employee confirmed that Harriram was "in the process" of being hired and that the disability office "would like her start date to be 9/6 if possible." *Id*, Ex. 3. Nevertheless, she claims that, a few days later, she was told that an individual "from the legal office" at CUNY interfered and that she could not be hired. *Id.* She also alleges that "[Defendant] Barbera is the official in the Legal Department who … caused [her] not to be hired." *Id.* at 1.

Taken together, Harriram plausibly alleges that Defendant Barbera and CUNY's legal department interfered with her hiring, and that she would have been hired "in the absence of [a] retaliatory motive" by the legal department. *Zann Kwan*, 737 F.3d at 846. Particularly in light of her assertion that the disability office had already selected her start date before the legal department became involved, Compl., Ex. 3., Harriram has pled sufficient facts to "draw the reasonable inference" of a retaliatory motive, *Iqbal*, 556 U.S. at 678. Although Defendants may ultimately be able to show that Harriram was denied employment for "some legitimate, non-retaliatory reason," *Zann Kwan*, 737 F.3d at 845, at this stage the Court finds that she has plausibly alleged that "retaliation was a but-for cause" of CUNY's decision to deny her employment, *Vega*, 801 F.3d at 90; *see also Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 195 (E.D.N.Y. 2016) (holding that a plaintiff plausibly stated a Title VII retaliation claim after alleging that he "was blacklisted because of [a] former lawsuit" and was denied a promotion). Accordingly, with respect

to Harriram's Title VII retaliation claim based on a failure-to-hire theory, Defendants' motion to dismiss is denied.

### 2. NYSHRL and NYCHRL Failure-to-Hire Retaliation Claims Against Defendant Barbera

Both the NYSHRL and the NYCHRL also make it unlawful to retaliate against individuals who file a complaint against their employer or prospective employer. *See* N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8–107(7). To the extent Harriram seeks to bring a retaliation claim against Defendant Barbera in her individual capacity under the NYSHRL and the NYCHRL, she states a plausible claim.

As an initial matter, individuals "can be held liable under both the NYSHRL and the NYCHRL, but the test to determine individual liability differs between state and city law." *Mitura v. Finco Servs., Inc.*, 2024 WL 232323, at *11 (S.D.N.Y. Jan. 22, 2024). "Under the NYSHRL, individual liability may be imposed if (1) a defendant … has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others." *Id.* "Although the NYCHRL does not require … the authority to make employment decisions, a plaintiff must still show that the individual actively participated in the [retaliatory] conduct." *Id.* Harriram plausibly alleges that Defendant Barbera had the authority to hire her and actively participated in the purported retaliation when she allegedly "caused [her] to not be hired." Compl. at 1.

Harriram has stated a NYSHRL retaliation claim under a failure-to-hire theory as "[t]he same standards govern retaliation claims" under both Title VII and the NYSHRL. *Farmer*, 473 F. Supp. 3d at 330 (S.D.N.Y. 2020). And, because Harriram has stated a claim under Title VII and the NYSHRL, she has *a fortiori* stated a claim under the NYCHRL. *Id.* at 334 (noting that NYCHRL's retaliation standard "is similar to—but in part more permissive than—its federal and

state analogues"); *see Deveaux v. Skechers USA, Inc.*, 2020 WL 1812741, at *7 (S.D.N.Y. Apr. 9, 2020) (holding that, because a plaintiff's retaliation claims met the Title VII and NYSHRL standard, they also satisfied the NYCHRL standard).  Accordingly, for the reasons stated in its Title VII analysis, the Court denies Defendants' motion to dismiss Harriram's retaliation claims under both statutes.[7]

### 3.   Title IX Failure-to-Hire Retaliation Claim Against CUNY

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Schools receiving federal funding are also barred from retaliating against students who complain of sex discrimination."  *Bailey v. New York L. Sch.*, No. 19-3473, 2021 WL 5500078, at *2 (2d Cir. Nov. 24, 2021).  At the motion to dismiss stage, "a plaintiff need only allege facts which give plausible support" to an inference of retaliation to succeed.  *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 278 (N.D.N.Y. 2022).

Because employment discrimination comes within the broad purview of Title IX, *see Vengalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022), CUNY's alleged refusal to hire Harriram constitutes a plausible retaliation claim.  *See N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 n.26 (1982) (noting that the Court has repeatedly recognized "that Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination").  As relevant here, Title IX claims "require[] the same kind of proof required" for Title VII claims.  *Papelino v.*

---

[7] At this juncture, the Court rejects Defendant Barbera's qualified immunity defense because "the facts supporting the defense" do not "appear on the face of the [C]omplaint."  *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015); *see* Def. Br. at 20-21.  Indeed, a qualified immunity defense is "typically addressed at the summary judgment stage" because it "usually depends on the facts of the case, … making dismissal at the pleading stage inappropriate."  *Woods v. Goord*, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002).

*Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  Neither party contests that CUNY is an "education program or activity" for the purposes of Title IX, *see* 20 U.S.C. § 1681(a), and Harriram's prior lawsuits include allegations of sex discrimination.  *See Harriram I* at *5.  Thus, for the same reasons as discussed above, Harriram states a Title IX retaliation claim and Defendants' motion to dismiss is denied.[8]

### B.  Business School Event

Harriram next alleges that CUNY and Defendant Ebersole retaliated against her by denying her access to a business school event.  Compl. at 2-3.  The Court finds that Harriram has failed to state a retaliation claim under Title VII, the NYSHRL, or the NYCHRL based on this allegation, but that she has adequately stated a retaliation claim against CUNY under Title IX.

### 1.  Title VII Retaliation Claim Against CUNY

Title VII prohibits an employer from discriminating or retaliating against "any of his employees."  42 U.S.C. § 2000e–3(a).  "Title VII, by its terms, applies only to employees." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).  Harriram's allegations concerning the business school event cannot establish a Title VII retaliation claim because Harriram does not allege that she was employed by CUNY at the relevant time.  *See O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) (noting that a Title VII claim must fail when a plaintiff is "not a[n] employee within the meaning of Title VII").  Further, an adverse action for purposes of Title VII must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

---

[8] To the extent Harriram seeks to assert a Title IX claim against Defendant Barbera or Ebersole, these claims must fail because Title IX claims may not be brought against individuals.  *Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008).

significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Accordingly, Harriram's Title VII claim about the business school event must be dismissed.

### 2.  NYSHRL and NYCHRL Retaliation Claims Against Defendant Ebersole

As discussed above, the NYSHRL and the NYCHRL similarly make it unlawful to retaliate

against individuals who file complaints against their employer.  N.Y. Exec. Law § 296(7); N.Y.C.

Admin. Code § 8–107(7).  "An essential element of a claim under the NYSHRL or the NYCHRL

is the existence of an employer-employee relationship."  *McHenry v. Fox News Network, LLC*,

510 F. Supp. 3d 51, 80 (S.D.N.Y. 2020); *see Farmer*, 473 F. Supp. 3d at 321-323 (explaining that,

under Title VII, the NYSHRL and the NYCHRL, courts apply the same standard "[t]o determine

whether [an employer-employee relationship exists for] purposes of all claims."); *Knight v. State*

*Univ. of N.Y. at Stony Brook*, 880 F.3d 636, 639 (2d Cir. 2018).  To the extent Harriram seeks to

bring retaliation claims against Defendant Ebersole in her individual capacity under the NYSHRL

and the NYCHRL, these claims are dismissed because Harriram fails to allege that she was

employed by Ebersole during the relevant period.  *See McHenry*, 510 F. Supp. 3d at 80.

### 3.  Title IX Retaliation Claim Against CUNY

Unlike Title VII, the NYSHRL, or the NYCHRL, Harriram plausibly states a Title IX

retaliation claim based on her allegations that CUNY denied her access to a business school event.

Title IX retaliation claims require a plaintiff to plausibly allege that a defendant took an

"adverse school-related action" against her because of her complaints of sex discrimination.  *Novio*

*v. New York Acad. of Art*, 286 F. Supp. 3d 566, 577 (S.D.N.Y. 2017); *see Murray v. New York*

*Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) ("[W]hether for sexual harassment or

retaliation, courts have generally adopted the same legal standards that are applied to such claims

under Title VII.").  Adverse school-related actions are those which "could well dissuade a

reasonable [student] from making or supporting a charge of discrimination." *Doe v. Syracuse Univ.*, 2023 WL 7391653, at *3 (2d Cir. Nov. 8, 2023). "The standard applicable to [both] Title VII … and Title IX retaliation claims is 'but-for' causation." *Nagle v. E. Greenbush Cent. Sch. Dist.*, 2018 WL 4214362, at *17 n.35 (N.D.N.Y. Feb. 21, 2018).

Here, Harriram asserts that she was a CUNY student in the fall of 2022 when the business school event was held. *See* Compl. at 1, Ex. 17. She also plausibly alleges that (1) CUNY took an adverse school-related action against her (2) because of her prior sex discrimination lawsuits.

First, in determining "whether such events are an educational opportunity or benefit for the purposes of Title IX," *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 370 (S.D.N.Y. 2017), the Court finds that denying Harriram access to the business school event can plausibly constitute an adverse school-related action. Harriram asserts that she was denied entry to a business school function that included programming led by Bronx Borough President Vanessa L. Gibson and a subsequent guest reception. Compl., Ex. 9. She further alleges that the event in question was a "significant milestone" for CUNY and its students, as it was the "official launch" of Lehman College's School of Business. Compl., Ex. 9. Harriram also maintains that she wanted to attend this event because, among other reasons, "[p]art of being a student is being able to attend all and any events that the College offers." Dkt. No. 27 ("Pl. Br.") at 2. A reasonable student in her position could plausibly believe that access to such an event would provide important educational benefits, such as networking and career opportunities. Indeed, under Title IX, adverse actions can include "exclusion from job fairs and other networking events." *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021). Harriram thus plausibly alleges that CUNY's actions could "well dissuade" a reasonable student from initiating a discrimination complaint. *Id.*

Second, Harriram plausibly alleges that CUNY denied her entrance to the event because of her prior lawsuits.  In the Complaint, Harriram asserts that Defendant Ebersole and other CUNY officials made "false statements" when preventing her from attending the event.  *See* Compl. at 3. After her RSVP was submitted and approved by CUNY, *id.*, Ex. 9, she received an email from Defendant Ebersole, informing her that she was "not permitted to join the event" because she is "not up to date with respect to [her] alumni dues."  *Id.*, Ex. 7.  Just six minutes later, a CUNY official sent an "alert" to other CUNY officials: "FYI & ATTENTION [Priya Harriram] is not allowed on campus please alert all Gates."  *Id.*  Although Defendants maintain that Ebersole's email provides a "non-retaliatory, legitimate reason to deny her entry to the business school event," Def. Br. at 19, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

Here, the Court finds that Harriram asserts enough facts to state a plausible retaliation claim.  That Harriram may not have paid alumni dues does not itself explain the urgency of CUNY's "alert" or why she was "not allowed on campus."  Further, Harriram plausibly alleges that that the event was open to all CUNY students, of which she was one.  *See* Pl. Br. at 2 (asserting that "students were allowed" at the event); *id.*, Ex. 6 (an email from a business school employee confirming the event was "open to those who rsvp'd" and that "[s]ome students attended"). This allegation, accepted as true, contradicts CUNY's purported explanation that the event was "not for the student body at large" and provides plausible support to an inference of retaliation. Compl., Ex. 7; *see Dane*, 974 F.3d at 189.  Accordingly, Harriram adequately states a Title IX retaliation claim against CUNY, and Defendants' motion to dismiss on this claim is denied.

### C.  Bar on Taking Math Courses

Harriram lastly maintains that CUNY retaliated against her by barring her from taking in-person math courses at Lehman College through the use of no contact orders.  Compl. at 3-4.  The Court again finds that Harriram fails to state a retaliation claim under Title VII, the NYSHRL, or the NYCHRL for this allegation, but that she adequately states a retaliation claim against CUNY under Title IX.

#### 1.  Title VII Retaliation Claim Against CUNY

As previously discussed, Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees … because he has made a charge" against the employer.  42 U.S.C.A. § 2000e–3(a).  To the extent Harriam seeks to bring a Title VII claim because she was prevented from taking math courses, her claim must be dismissed because she does not allege that she was employed by CUNY during the relevant period.  *See Salamon*, 514 F.3d at 226.

#### 2.  NYSHRL and NYCHRL Retaliation Claims Against Defendants Barbera and Ebersole

Similarly, both the NYSHRL and the NYCHRL make it unlawful to retaliate against individuals who file a complaint against their employer.  N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8–107(7).  To the extent Harriram seeks to bring NYSHRL or NYCHRL claims against either Defendant Barbera or Defendant Ebersole on these allegations, these claims must also be dismissed because she fails to allege that she was ever employed by either Defendant.  *See McHenry*, 510 F. Supp. 3d at 80.

#### 3.  Title IX Retaliation Claim Against CUNY

Under Title IX, however, Harriram does state a retaliation claim against CUNY for denying her access to all in-person math courses at Lehman College.

First, Harriram plausibly alleges that this restriction is a "but for" consequence of her prior sex discrimination lawsuits. *See Nagle*, 2018 WL 4214362, at *17 n.35. Indeed, in September 2022, CUNY sent Harriram several letters explicitly stating as much: "The Office of Student Affairs has been made aware that there is litigation involving yourself and the above-named parties and *as a result* you are to have no communication or contact with the parties while on campus." *Id.*, Ex. 20 (emphasis added). Because of her lawsuits, Harriram was no longer permitted "to take any in-person courses in the Math Department" at Lehman College. *Id.*, Ex. 19.

Second, Harriram plausibly alleges that being denied access to these courses constitutes an "adverse school-related action" under Title IX. *Novio*, 286 F. Supp. 3d at 577. Such a restriction, under the circumstances alleged, "could well dissuade a reasonable [student] from making or supporting a charge of discrimination." *Doe*, 2023 WL 7391653, at *3.

To be sure, a school's use of a no contact order is not, in and of itself, an adverse action under Title IX. Indeed, New York's stated purpose in employing no contact orders is "to enable [students] to continue [their] education without undue stress or trauma." CUNY Public Safety Dep't, *The City University of New York Students' Bill of Rights*, https://www.lehman.edu/lehman/public-safety/documents/2016/student-rights-brochure.pdf.[9] But, here, the restrictions imposed on Harriram go beyond a typical "interim remedial measure." *Id.* Although her lawsuits involved two Lehman math professors, Joseph Fera and Brian Wynne, CUNY's order swept wider, preventing Harriram from accessing *any* math courses on campus. *See* Compl., Ex. 19. And, when Harriram asked to take math courses with different professors or

---

[9] New York public schools often employ no contact orders in cases involving allegations of sexual misconduct or discrimination, primarily serving a safety function. *See Doherty v. Bice*, 2020 WL 5548790, at *2 (S.D.N.Y. Sept. 16, 2020). In a typical order, "if the accused and complainant observe each other in a public place, it is the responsibility of the accused to leave the area immediately and without directly contacting the complainant." *Id.* (quoting SUNY Purchase's no contact policy).

at times "when Professor Fera and Professor Wynne [were] not there," CUNY denied her requests. Compl. at 4.  A CUNY official instead explained that its decision was an attempt to "de-escalate campus issues" and was "in lieu of more serious measures such as … campus removal."  Compl., Ex. 23.  Harriram asserts that she "would like to take any [m]ath classes at Lehman College" as all other students can, but because of her complaints against two math professors for sexual harassment, she is instead required to remove herself from campus and travel to another CUNY institution altogether to continue her education.  *Id.* at 4.  Under these circumstances, CUNY's actions could plausibly deter a reasonable student from making future complaints about sexual harassment or discrimination.  *Doe*, 2023 WL 7391653, at *3; *see Ploeger v. Trustees of Univ. of Pennsylvania*, 653 F. Supp. 3d 188, 197 (E.D. Pa. 2023) (finding a Title IX adverse action occurred where a plaintiff was "block[ed from] re-enrollment" in classes).

 Accordingly, Harriram plausibly states a Title IX retaliation claim against CUNY, and Defendants' motion to dismiss this claim is denied.

## V.      Article 78 Claims

Finally, Harriram asserts that CUNY and the individual Defendants improperly took "arbitrary and capricious" actions, including by preventing her from attending the business school event and banning her from math courses.  Compl. at 3-4.  She also appears to allege that CUNY failed to follow its own Article XV disciplinary policy and Henderson Rules.  *Id.* at 4.  To the extent Harriram argues that CUNY's administrative determinations are arbitrary decisions, "[t]he proper procedural vehicle for challenging an administrative determination is a proceeding pursuant to Article 78."  *Durham v. Suny Rockland Cmty. Coll.*, 2016 WL 128214, at *7 (S.D.N.Y. Jan. 12, 2016); *see* N.Y. C.P.L.R. § 7801.  Although "district courts in this circuit are split on the issue of whether they can (or should) exercise jurisdiction over Article 78 claims," *Garofalo v. City of New*

*York*, 2023 WL 3792514, at \*5 (E.D.N.Y. June 2, 2023), in general, "federal courts are loath to exercise jurisdiction over Article 78 claims." *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999).

Furthermore, under New York State law, individuals challenging administrative determinations "must exhaust their administrative remedies before pursuing relief in a court of law." *Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 424 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16 (2d Cir. 2012). "This requirement applies to state claims brought in federal court." *Id.* Harriram does not allege that she availed herself of CUNY's Article XV disciplinary appeals process, *see* CUNY Article VI § 15.4, or that she otherwise exhausted any administrative remedies. Nor does she aver that she brought an Article 78 proceeding against Defendants related to these allegations. Her remaining claims are thus dismissed. Even if Harriram had exhausted her administrative remedies, the Court would still decline to exercise jurisdiction over these claims. *See Birmingham*, 70 F. Supp. 2d at 372 ("Even where a plaintiff has one or more federal claims still alive … the interests of judicial economy are not served by embroiling this court in a dispute over local laws and state procedural requirements.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion to dismiss all claims except for: (1) Harriram's retaliation claims against Defendants CUNY and Barbera based on a failure-to-hire theory, brought under Title VII, Title IX, the NYSHRL, and the NYCHRL; (2) her Title IX retaliation claim against CUNY for denying her access to the business school event; and (3) her Title IX retaliation claim against CUNY for preventing her from taking math courses at Lehman College. This action,

which was previously referred to Magistrate Judge Moses for general pretrial management, shall proceed before her with respect to discovery regarding her remaining retaliation claims.

As a reminder to Plaintiff, she may wish to once again consult the New York Legal Assistance Group's legal clinic for pro se litigants, by visiting its website at nylag.org/pro-se-clinic or by calling (212) 659-6190.  This clinic, which is unaffiliated with the Court, assists pro se litigants with federal civil cases.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 23.

Dated:    March 31, 2024
          New York, New York

_____
Hon. Ronnie Abrams
United States District Judge

22