UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
PRIYA HARRIRAM,                                             :
                                                            :
                              Plaintiff,                    :        22-CV-09712 (JAV)
                                                            :
          -v-                                               :        OPINION AND ORDER
                                                            :
CITY UNIVERSITY OF NEW YORK, et al.,                        :
                                                            :
                              Defendants.                   :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Before the Court is a motion for summary judgment by defendants the City

University of New York ("CUNY") and Bridget Barbera ("Barbera") on Plaintiff's

claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C.

§ 1681, *et seq.*, ("Title IX"), the New York State Human Rights Law, N.Y. Exec. Law

§ 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code

§ 8-107 ("NYCHRL").  For the reasons that follow, Defendants' motion is GRANTED

IN PART AND DENIED IN PART.

## BACKGROUND

The following facts in this case are undisputed, except as specifically noted to

be in dispute.

Plaintiff obtained an undergraduate degree from Lehman College ("Lehman"

or "Lehman College") in 2010 and a master's degree in math and education in

approximately 2016.  ECF No. 133 ("Opp'n Mem."), Exs. 60, 61.  From

approximately 2018 through 2020, Plaintiff took additional math classes at Lehman College.  *Id.*, Ex. 62.

In 2021, Plaintiff filed a federal suit against CUNY and various CUNY administrators, including Bridget Barbera, Dawn Ewing-Morgan, as well as Joseph Fera and Brian Wynne, professors in the Math Department.  *See* Dkt. No. 21-CV-3696 (RA) (S.D.N.Y.).  She alleged that she had been subjected to race and national origin discrimination arising from the failure to hire her for a math adjunct lecturer position.  She also asserted claims of sexual harassment against Professors Feras and Wynne.  *Harriram v. Fera*, No. 21-CV-3696 (RA), 2024 WL 1020266, at *1 (S.D.N.Y. Mar. 8, 2024).  That case was ultimately dismissed for failure to state a claim in March 2024.  *Id.*

Plaintiff held a position as a College Assistant at the Information Technology Center at Lehman College.  *See Harriram v. Washington*, Index No. 212/2022E (N.Y. Sup. Ct. Sept. 26, 2022) (ECF No. 116-2) ("*Harriram* Article 78 Decision").  She was terminated from this position on November 8, 2021.  ECF No. 116 ("Ferguson Decl."), Ex. A ("Termination Letter").  Her termination letter, signed by Bridget Barbera, the Executive Counsel and Labor Designee for Lehman College, stated that her termination followed an investigation conducted by CUNY's Title IX coordinator, Dawn Ewing Morgan, which determined that Plaintiff had sent six pseudonymous letters and emails to members of the CUNY community and a Lehman math professor's wife, accusing the math professor of, *inter alia*, sexual misconduct with students.  *Id.*; *Harriram* Article 78 Decision at 3; Opp'n Mem., Ex.

14. As part of that investigation, Morgan also looked into Plaintiff's allegations of sexual misconduct involving Professors Fera and Wynne and concluded that they were unfounded. *Harriram* Article 78 Decision at 5.

Plaintiff subsequently challenged her termination in an Article 78 proceeding. *See Harriram* Article 78 Decision. The named defendants in that suit were Eric Washington, Bridget Barbera, and Lehman College. *Id.* The New York Supreme Court upheld Plaintiff's termination, holding that it was not arbitrary and capricious. *Id.* at 9. In doing so, the New York Supreme Court found that Lehman had conducted a thorough investigation with respect to the author of the pseudonymous letters and emails, which included an interview of Plaintiff, interviews of witnesses identified by Plaintiff, and the retention of a forensic linguistic expert. *Id.* at 6. That expert had determined that there was "only the remotest of possibilities" someone other than Plaintiff had written the pseudonymous missives on March 11, 2021. *Id.* at 3-4. The investigative report concluded that Plaintiff had sent the emails as retaliation for her rejection from an adjunct teaching position in the math department. *Id.* at 4-5.

On April 25, 2022, Harriram again challenged her termination, this time in federal district court. *See* Dkt. No. 22-CV-3356 (RA) (S.D.N.Y.). The named defendants in this suit included Joseph Fera, the math professor who was the subject of the harassing emails and letters, Dawn Ewing-Morgan, Bridget Barbera, and Eric Washington, along with Lehman and CUNY. *Id.* This suit was dismissed

on res judicata grounds in June 2023. *Harriram v. Fera*, No. 22-CV-3356 (RA), 2023 WL 4353824, at *1 (S.D.N.Y. June 30, 2023).

Plaintiff reenrolled at Lehman College in Fall 2022. *See* ECF No. 116-3 ("Pl. Dep.") at 21:4-21. On or about August 10, 2022, Plaintiff reached out to the Office of Student Disability Services at Lehman ("Disability Services") seeking a position as a notetaker. Ferguson Decl., Ex. E. Disability Services indicated their intent to hire Plaintiff, beginning September 6, 2022. Opp'n Mem., Ex. 30. Plaintiff submitted her on-boarding documentation to Lehman's Human Resources Department, which reviews potential hires and processes approved applications. *Id.*; ECF No. 118 ("Zambrana Decl."), ¶ 3.

Natalie Zambrana, a Human Resources Manager at Lehman, became aware that Plaintiff had applied for a position with Disability Services. Zambrana Decl., ¶¶ 1, 5. Zambrana attests that, based on her personal knowledge of Plaintiff's prior termination in 2021, she was concerned that Disability Services should not move forward with the hire. *Id.*, ¶¶ 2-3, 5-6. Zambrana states that she consulted with Bridget Barbera in Lehman's Office of Special Counsel. *Id.*, ¶ 6; Opp'n Mem., Ex. 29. Disability Services was instructed not to move forward with hiring Plaintiff, and ultimately Plaintiff was not hired. Opp'n Mem., Ex. 28; Zambrana Decl., ¶ 7.

On August 4, 2022, Lehman announced that it would be hosting an official launch event for its new School of Business on September 15, 2022, at the Lehman Center for the Performing Arts. *See* ECF No. 119 ("Tomlinson Decl.") at ¶¶ 2-3; Compl., Ex. 5. Plaintiff received an invitation to the event. Compl., Ex. 5. She

4

RSVP'd and received an email confirmation on September 13, 2022.  Compl., Exs. 8-9.  On the day of the event, Tara Tomlinson, a Lehman college administrator, learned that "Plaintiff had RSVP'd for the event somehow," even though she was not on the invite list.  Tomlinson Decl., ¶ 6.  Another Lehman employee, Susan Ebersole, sent Plaintiff an email telling her that she was "not up to date with respect to [her] alumni dues," and thus her invitation was issued "in error."  Opp'n Mem., Ex. 42.  The email further stated that the "event is open for all faculty and staff but not for the student body at large."  *Id.*

Tomlinson "informed [her] office and other campus officials that Plaintiff was not invited and should not be permitted to attend."  Tomlinson Decl., ¶ 7.  Lehman personnel were emailed a copy of Plaintiff's photo and were advised that Plaintiff was not allowed access to the campus, and to "alert all gates."  Ferguson Decl., Exs. G-H.  Plaintiff was subsequently denied entry to the event.  *Id.*, Ex. 33-34.

In September 2022, after learning that Plaintiff had reenrolled as a student at Lehman, Professors Fera and Wynne requested No Contact Orders with Plaintiff.  ECF No. 121 ("Fera Decl."), ¶¶ 4-6; ECF No. 122 ("Wynne Decl."), ¶ 4.  A No Contact Order is a formal administrative directive issued by Lehman requiring parties to have no direct or indirect interaction, including but not limited to written or electronic communication or third-party contact.  ECF No. 117 ("Santos Decl."), ¶ 3.  A No Contact Order remains in effect until it is officially removed in writing by Lehman.  These measures are implemented pursuant to the CUNY Students' Bill of

Rights and Title IX Policies. *Id.*, ¶ 3 & Ex. A ("CUNY Students' Bill of Rights" and "Title IX Policies").

Upon learning that Professors Fera and Wynne had requested No Contact Orders with Plaintiff, Lehman's Director of Compliance and Operations, Denny Santos, emailed Plaintiff on September 19, 2022, stating that "[i]t has come to our attention that you are currently enrolled at Lehman College as an undergraduate student," and "[t]he Office has also learned of the prior circumstances and events involving you, Professor Joseph Fera and Professor Brian Wynne." Compl., Ex. 17. In that email, Santos requested a meeting with Plaintiff on September 20, 2022, at 5 pm, and stated that a failure to respond to the request could result in "further disciplinary charges." *Id.* The email did not mention the potential issuance of No Contact Orders but did attach CUNY's Disciplinary Policy and Rules for Public Order. *Id.*

Santos issued the No Contact Orders to Plaintiff on the morning of September 20, 2022. Santos Decl., Exs. B. The No Contact Orders outlined that Plaintiff was "not permitted to take any in-person courses in the Math Department" and "not permitted to take any courses that are taught by Professor [Fera or Wynne]." Compl., Exs. 18 ("Fera Order"), 19 ("Wynne Order"). The orders did allow, however, for Plaintiff to take online math courses at Lehman and stated that Lehman would facilitate Plaintiff taking in-person "e-permit" math courses at other CUNY institutions if she so chose. Santos Decl., ¶ 8. "E-permit" means that Plaintiff would receive credits for those classes as if she had taken them at Lehman.

6

*Id.* At the time Santos crafted the No Contact Orders, Plaintiff was not enrolled in any math classes and did not require any further math classes to complete her declared degree. *Id.*, ¶ 7.

Santos also issued a No Contact Order prohibiting contact between Plaintiff and Fernando Delgado, Eric Washington, Dawn Ewing-Morgan, and Bridget Barbera, the Lehman staff who had been named as defendants in Plaintiff's then-pending federal lawsuits. *See* Santos Decl., ¶¶ 5-6; Santos Decl., Ex. B. This order was transmitted to Plaintiff on September 23, 2022. Compl., Ex. 20. The order states that "[t]he Office of Student Affairs has been made aware that there is litigation involving yourself and the above-named parties" and thus prohibits contact between Plaintiff and the named individuals. *Id.*

## PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, commenced this suit against CUNY, Lehman College, Susan Ebersole, and Bridget Barbera, asserting claims of race and national origin discrimination, as well as retaliation, under Title VII, Title IX, the NYSHRL and the NYCHRL.

In a decision dated March 31, 2024 ("Opinion"), District Judge Ronnie Abrams dismissed all claims against Lehman College. ECF No. 37 at 6. Judge Abrams similarly dismissed all the NYSHRL and NYCHRL claims brought against CUNY and against Defendants Barbera and Ebersole in their official capacities on grounds of sovereign immunity. *Id.* at 6-7. The Opinion held that the Complaint failed to state a claim for discrimination against any defendant. *Id.* at 8-9.

The Opinion allowed the retaliation claims against CUNY under Title VII and Title IX, and against Barbera in her personal capacity under the NYSHRL and the NYCHRL, to proceed. *Id.* at 10-14. Specifically, the Opinion concluded that the Complaint sufficiently stated a retaliation claim against CUNY and Barbera based on the failure to hire Plaintiff for the notetaker position. The Opinion also denied the motion to dismiss the Title IX retaliation claims asserted against CUNY for denying Plaintiff access to the business school event and for preventing her from taking math courses at Lehman College. *Id.* at 13-20.

This case was subsequently reassigned to the undersigned in December 2024.

## LEGAL STANDARDS

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted). The moving party has the burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact"). In forming this assessment, the Court must view all "evidence in

the light most favorable to the [non-moving party]." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). "Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Ultimately, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Further, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up), including when facing a summary judgment motion, *Jorgensen v.*

9

*Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).  Nevertheless, the "application of this different standard does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (internal quotation marks omitted).

## DISCUSSION

Defendants CUNY and Barbera move for summary judgment as to all remaining claims in this case.  The motion for summary judgment is granted as to the claims relating to the decision not to hire Plaintiff for the notetaker position with Disability Services and the ban on Plaintiff taking in-person math classes at Lehman.  The motion for summary judgment is denied, however, as to Plaintiff's claim against CUNY under Title IX for exclusion from the business school event.

## A.    Failure-to-Rehire Retaliation Claims

### 1.    Title VII Claim Against CUNY

Title VII prohibits an employer from discriminating against an employee or applicant for employment because the employee has engaged in protected activity. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023); 42 U.S.C. § 2000e-3(a). Such claims are analyzed using the burden-shifting framework from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  "Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she [(i)] 'participated in a protected activity,'" that she "[(ii)] 'suffered an adverse employment action,' and [(iii)] 'that there was a causal connection between her engaging in the protected activity and the adverse employment

10

action.'" *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (citing *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010)).  To satisfy the third prong of this test, the protected activity must be a 'but-for' cause of the employer's adverse action.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90-91 (2d Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  Even if Plaintiff's protected activity was a "substantial" or "motivating" factor, the "but-for" causation standard is not met unless a reasonable jury could conclude that "the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (citing *Nassar*, 570 U.S. at 360).

Once Plaintiff establishes her prima facie case, Defendants must rebut this "presumption of retaliation" with "a legitimate, non-retaliatory reason for the adverse employment action."  *Ya-Chen Chen*, 805 F.3d at 70 (citing *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005)).  If such a reason is provided, "the presumption of retaliation dissipates."  *Id.*  Plaintiff must then come forward with evidence from which a reasonable jury could conclude that her protected activity was a but-for cause of the adverse action.  *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 49 (2d Cir. 2025).

Plaintiff easily satisfies the first two prongs of her prima facie case, as filing a lawsuit to challenge alleged sexual harassment is protected activity, *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (citing cases), and refusal to hire constitutes an adverse employment action, *Banks*, 81 F.4th at

11

259.  In establishing a prima facie case, Plaintiff can rely on direct or indirect evidence of causation.  Direct evidence is that which "demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct."  *Banks*, 81 F.4th at 277 (cleaned up).  Indirect evidence can include evidence that "the protected activity was closely followed in time by the adverse employment action."  *Id*. (citations omitted).

Plaintiff argues in her opposition papers that Barbera directed the Disability Office not to hire her because of her then-pending federal litigation.  Opp'n Mem. at 16.  In support of this contention, Plaintiff points to an email chain between herself and Disability Services indicating that Disability Services was in the process of onboarding Plaintiff when someone "from the legal office at Lehman" intervened and instructed Disability Services that they could not hire Plaintiff.  Opp'n Mem., Ex. 28.  That evidence, along with the temporal proximity between Plaintiff's then-pending federal lawsuits and the adverse action, is sufficient to satisfy the *de minimis* requirements of establishing a prima facie case.  *Zann Kwan*, 737 F.3d at 845.

CUNY, however, has come forward with evidence of a legitimate non-retaliatory reason for its decision not to hire Plaintiff.  A human resources professional at CUNY attests that she flagged Plaintiff's Disability Services application for Lehman's Office of Special Counsel based on her "personal knowledge of Plaintiff's termination in . . . 2021."  Zambrana Decl., ¶¶ 2-6.

12

Specifically, a year before Plaintiff applied for the notetaker position, CUNY terminated Plaintiff from a different job for cause after a substantial Title IX investigation concluded that she had sent pseudonymous emails and letters about CUNY faculty to members of the community and a professor's wife. Ferguson Decl., Ex. A; *Harriram* Article 78 Decision at 3; Opp'n Mem., Ex. 14

Courts have regularly held that prior terminations are a legitimate, non-retaliatory reason not to rehire a prospective employee. *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (affirming summary judgment on retaliation claims where employer had legitimate reason to believe plaintiff would be a poor employee based upon his prior performance and termination); *Brennan v. Metro. Opera Ass'n, Inc.*, 284 A.D.2d 66, 77 (1st Dep't 2001) (upholding as legitimate defendant's explanation that it chose not to rehire plaintiff based upon her poor prior performance).

Accordingly, Plaintiff must come forward with evidence to create a triable issue of fact as to whether her prior protected activity is the but-for cause of CUNY's failure to hire her for the notetaker position. Although "the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation, without more such temporal proximity is insufficient to satisfy plaintiff's burden to bring forward some evidence of pretext." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 249 (S.D.N.Y. 2021) (cleaned up).

13

Plaintiff has not pointed to any evidence suggesting that the reasons offered by CUNY are pretextual or that her protected activity was the but-for cause of CUNY's hiring decision.  In her opposition papers, Plaintiff principally argues that the original decision to terminate her in 2021 was pretextual, and that the evidence did not support CUNY's conclusion that she was responsible for writing the harassing emails and letters directed at Professor Fera.  Opp'n Mem. at 14-15.  Yet Plaintiff has already unsuccessfully challenged her termination for cause based upon those events in two separate court actions and is precluded from relitigating those issues here.

The only other evidence upon which Plaintiff relies, the involvement of the legal department in the decision-making process, is fully consistent with CUNY's proffered explanation.  Accordingly, on this record, no reasonable jury could conclude that CUNY, after terminating Plaintiff for cause for writing emails and letters widely distributed to the Lehman community falsely accusing a Lehman professor of sexual misconduct, would have nonetheless hired Plaintiff for the notetaking position in 2022 but for her protected activity.

Accordingly, the Court grants CUNY's motion for summary judgment as to Plaintiff's Title VII claim.

### 2.      Title IX Claim Against CUNY

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

14

assistance." 20 U.S.C. § 1681(a). "Schools receiving federal funding are also barred from retaliating against students who complain of sex discrimination." *Bailey v. New York L. Sch.*, No. 19-3473, 2021 WL 5500078, at \*2 (2d Cir. Nov. 24, 2021). Neither party contests that CUNY is an "education program or activity" for the purposes of Title IX. 20 U.S.C. § 1681(a). Because employment discrimination comes within the broad purview of Title IX, *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 104 (2d Cir. 2022), Plaintiff is eligible to seek relief under Title IX for her claim that CUNY has retaliated against her for her prior lawsuits alleging sex discrimination. *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 n.26 (1982) (noting that the Court has repeatedly recognized "that Congress has provided a variety of remedies, at times overlapping, to eradicate employment discrimination").

As relevant here, however, Title IX claims "require[] the same kind of proof required" for Title VII claims. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011). Plaintiff's Title IX retaliation claim therefore fails for the same reasons as her Title VII retaliation claim.

### 3. NYSHRL and NYCHRL Claims Against Barbera

Both the NYSHRL and the NYCHRL make it unlawful to retaliate against individuals who file a complaint against their employer or prospective employer. *See* N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7). "Employment-discrimination claims under the NYSHRL have long been analyzed identically to claims under Title VII." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 106 (S.D.N.Y. 2024) (cleaned up). In June 2019, however, the

15

New York State Legislature passed several amendments to the NYSHRL that rendered "the standard for [those] claims closer to the standard of the NYCHRL." *Id.*; *see also Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837 (GHW), 2022 WL 912940, at \*7 (S.D.N.Y. Mar. 28, 2022). Although "case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL" in all contexts, *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023), New York courts now apply the legal standards developed under the NYCHRL to cases arising under the NYSHRL. *See, e.g., Niemotko v. Mount Saint Mary Coll.*, 241 N.Y.S.3d 306, 310 (2d Dep't 2025) (applying a mixed motive causal standard in case arising under NYSHRL). *See also Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024) ("The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." (footnote omitted)); *Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 884-85 (N.Y. Sup. Ct. 2023) ("the language of the NYSHRL is now nearly identical to that of the NYCHRL"). Accordingly, the Court will analyze Plaintiff's NYSHRL and NYCHRL claims together.

"To prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011)), "and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in

such action," *id.* (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 33-34 (1st Dep't 2009)).  Unlike the but-for standard used under Title VII, an employer is liable under the "as a result" NYCHRL standard "if [she] was motivated *at least in part* by an impermissible motive." *Kia Song Tang v. Glocap Search LLC*, No. 14-CV-1108 (JMF), 2015 WL 1344788, at *5 (S.D.N.Y. Mar. 24, 2015) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (2d Dep't 2013)); *accord Mihalik,*715 F.3d at 110 (Plaintiff "must show that she has been treated less well at least in part '*because of* her gender.'").

"[C]ourts in this Circuit typically apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Penzo v. Consol. Edison Co. of New York, Inc.*, No. 19-CV-07478 (MKV), 2024 WL 3824072, at *3 n.6 (S.D.N.Y. Aug. 15, 2024) (citing *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 284 n.1 (S.D.N.Y. 2020)).  As such, "[s]ummary judgment dismissing a claim under the NYCHRL should be granted only if no jury could find [the] defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." *Robinson v. De Niro*, 739 F. Supp. 3d 33, 102 (S.D.N.Y. 2023) (quoting *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 680, 173 A.D.3d 1233 (2d Dep't 2019)).  "Under the mixed motive analysis, the plaintiff may defeat the defendant's evidence of legitimate reasons for the challenged action by coming forward with evidence from which it could be found that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for the adverse employment decision." *Id.* (cleaned up).

17

Accordingly, to defeat Defendant's summary judgment motion, Plaintiff need not contradict, prove pretextual, nor even cast doubt on Defendant's stated rationale for the hiring decision, Plaintiff's past termination for cause. If Plaintiff does none of these things, however, she must otherwise demonstrate through admissible evidence that a "reasonable jury could conclude . . . [this] stated reason[] w[as] not [defendant's] *sole* basis for taking action, and that [defendant's] conduct was based at least '*in part* on discrimination.'" *Ya-Chen Chen*, 805 F.3d at 76 (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 35 (1st Dep't 2012)) (emphasis added). Indeed, showing that Plaintiff's protected activity played *any* part in Defendant Barbera's communications with Disability Services regarding the hiring decision would be enough to deny summary judgment on the city and state law claims.

Plaintiff successfully links Barbera to the decision not to hire Plaintiff as a notetaker. She establishes that "Natalie [Zambrana] spoke to Bridget [Barbera]" about Ms. Zambrana's reservations about Plaintiff. Opp'n Mem., Exs. 19-20, 36-38 ("Washington Dep Tr.") at 91:6-9; *see also* Opp'n Mem., Ex. 29 (interrogatory response confirms Barbera spoke to Human Resources); Opp'n Mem., Ex. 28 (email from Disability Services states that someone from the legal department was involved in the decision not to hire Plaintiff).

Plaintiff's evidence falls short, however, of creating an issue of fact as to whether her prior protected activity played any role in Barbera's actions, or the hiring decision. Plaintiff asserts in her opposition papers that "[w]hen Zambrana

18

called Barbera . . . to follow[] through with the onboarding documents, Barbera persuaded her to rescind the job offer." Opp'n Mem. at 17.  Plaintiff provides no evidentiary basis for this assertion.  Yet even if the Court inferred that such a conversation took place, this does not speak to Barbera's motive in doing so. Plaintiff's bare assertion that Barbera acted in retaliation, Opp'n Mem. at 9, does not create a triable issue of fact as to causation.  *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"); *see also Adams v. Equinox Holdings, Inc.*, 662 F. Supp. 3d 444, 462 (S.D.N.Y. 2023) (granting summary judgment motion on NYCHRL claim where plaintiff could not identify "a scintilla of evidence suggesting that this stated reason for her termination is a pretext" or other evidence suggesting a retaliatory motive), *aff'd,* No. 23-608, 2024 WL 1787108 (2d Cir. Apr. 25, 2024).

Plaintiff largely points to inconsistencies between Barbera's deposition testimony and her colleague Eric Washington's deposition testimony as grounds for casting doubt on Barbera's credibility.  Opp'n Mem. at 18-19.  These contradictions, however, are all to do with the investigation into the pseudonymous emails and Plaintiff's subsequent termination in 2021, not the notetaker position.[1]  Plaintiff

---

[1] For instance, Barbera repeatedly testifies in her deposition that she "did not participate in the investigation" into the circumstances surrounding Plaintiff's termination.  Opp'n Mem., Exs. 16-18 & 24 ("Barbera Dep. Tr.") at 33:11–34:8, 40:1, 40:15-20, 42:8-10.  In contrast, Mr. Washington testifies that he "consult[ed] with [Barbera] because she was assigned to work with [he and Dawn Ewing-Morgan] in the investigation," Barbera "had knowledge" of the investigation, and she was "aware of what was going on."  Washinton Dep. Tr. at 26:18–27:15.

thus offers no additional evidence of Defendant Barbera's retaliatory motive beyond her lawsuits' temporal proximity to her rejection from the notetaker position, which is insufficient. *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 802 (S.D.N.Y. 2020) (cleaned up) ("[E]ven under the more relaxed NYCHRL standard, when Plaintiff's sole evidence of pretext is the temporal proximity between Plaintiff's complaints and Defendants' discipline, a NYCHRL retaliation claim cannot survive summary judgment if the employer has shown a non-retaliatory reason for the plaintiff's mistreatment").

The Court is conscious, particularly given the lower evidentiary standard demanded for Plaintiff's NYSHRL and the NYCHRL claims, that "an extra measure of caution is merited in affirming summary judgment" in cases involving claims of discrimination or retaliation "because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Robinson*, 739 F. Supp. 3d at 74 (citations omitted). That said, "trial courts should not treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (cleaned up). Despite their relatively broad standards, the NYSHRL and "NYCHRL do[] not alter the kind, quality, or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 170-71 (S.D.N.Y. 2011) (cleaned up); *see also Moore v. Metropolitan Transp. Auth.*, 999 F. Supp. 2d 482, 501 (S.D.N.Y. 2013) (granting summary judgment on a NYCHRL claim where "the

20

evidence . . . does not meet Plaintiff's burden to show that the [actions] were based in part on discrimination").

Because Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex*, 477 U.S. at 322, the NYSHRL and NYCHRL claims are dismissed.

## B. Title IX Retaliation Claim Against CUNY for Denial to Business School Event

Plaintiff has established a prima facie case of retaliation with respect to her exclusion from the business school event. Adverse school-related actions are those which "could well dissuade a reasonable [student] from making or supporting a charge of discrimination." *Doe v. Syracuse Univ.*, No. 22-2674, 2023 WL 7391653, at *3 (2d Cir. Nov. 8, 2023). Under Title IX, adverse actions can include "exclusion from job fairs and other networking events." *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 611 (D. Conn. 2021). The circumstances under which Lehman revoked Plaintiff's invitation to the event give rise to an inference of a causal connection to her prior protected activity.

CUNY proffers that Plaintiff was prohibited from attending the event because she was not on the exclusive guest list. Specifically, Tomlinson attests that any invitation Plaintiff received was in error because "[t]his was not an event open to the Lehman student body or even Lehman alumni as a whole." Tomlinson Decl., ¶ 4. Only alumni with degrees in economics or business were eligible to attend. *Id.* Additionally, a small group of students from the Association of Latino Professionals

21

for America at Lehman was invited to the event. *Id.* Students pursuing undergraduate degrees—as Plaintiff was in fall 2022—were ineligible to attend the event because alcohol was served without an identification screening process. *Id.*, ¶ 5.

Although CUNY has met its burden of offering a legitimate, non-retaliatory reason for its actions, Plaintiff has succeeded in pointing to "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" from which a reasonable jury could believe this explanation was pretextual. *Zann Kwan*, 737 F.3d at 846. First, CUNY has offered contradictory explanations for rescinding Plaintiff's invitation. In the email sent to Plaintiff on the day of the event, she was informed that she was not eligible to attend the event because she had not paid her alumni dues. Opp'n Mem., Ex. 42. In its court filings, however, CUNY makes no mention of alumni dues. Tomlinson states instead that Plaintiff's invitation was issued in error because only alumni from certain departments were included. Tomlinson Decl., ¶¶ 4, 6. Additionally, CUNY makes no effort to explain why it then proceeded to send pictures of Plaintiff to the various campus gates with an instruction to bar her from entry. Ferguson Decl., Exs. G-H. A jury could certainly infer that Lehman does not routinely bar its alumni or current registered students from campus, and issue security alerts at its gates, simply because they RSVP'd to an event to which they were invited in error. Accordingly, the motion for summary judgment as to the Title IX claim relating to exclusion from the business school event is denied.

22

C.      **Title IX Retaliation Claim Against CUNY for Denial of Access to In-Person Math Classes at Lehman College**

Plaintiff lastly maintains that CUNY retaliated against her by barring her from taking in-person math courses at Lehman College.  Although Plaintiff has made out a prima face case of retaliation, CUNY has provided a non-retaliatory explanation for this adverse school-related action.  Plaintiff has failed to meet her burden of adducing evidence sufficient to create a triable issue of fact as to whether retaliation was the but-for cause of CUNY's actions.

Three CUNY declarants—Santos, Wynne, and Fera—have attested that the No Contact Orders between Plaintiff and two math professors barred Plaintiff from taking classes in the math department because one of the professors "felt threatened by Plaintiff based upon their prior interactions," Santos Decl., ¶ 7, in conjunction with the investigation revealing that Plaintiff had sent pseudonymous letters and emails maligning one of the professors.  Santos Decl., ¶ 7; Fera Decl., ¶¶ 4-6; Wynne Decl., ¶¶ 3-4; Compl., Ex. 17.  Fera attests that he reported to Barbera during the COVID lockdown that he felt that he was being stalked by Plaintiff. Fera Decl., ¶ 4.  Fera was given a private parking space and accompanied by security when he had to come to campus.  *Id.*  Fera states that, upon learning in 2022 that Plaintiff had reenrolled as a student, he requested a No Contact Order. *Id.*, ¶¶ 5-6.  As Department Chair, Professor Fera has an office that is open to the public and located in the same building as, and in close proximity to, where math classes are taught.  Santos Decl., ¶ 7.  Further, Professor Fera was "especially concerned that if Plaintiff were to enroll in a Math course at Lehman, she would

23

need to have access to [his] office to make any complaints concerning Lehman Math faculty and any other guidance [he] regularly provide[s] to students as Chair of the department." Fera Decl., ¶ 6.

In her opposition papers, Plaintiff primarily relies upon the deposition testimony of Barbera and Washington, who both testified that they did not feel threatened or harassed by Plaintiff. *See* Opp'n Mem. at 20; *id.,* Exs. 47-50. Yet Barbera and Washington are not affiliated with the math department. The prohibition on taking in-person math classes stems from the Wynne Order and the Fera Order.

Plaintiff also argues that she did not write the harassing emails regarding Professor Fera that in part justified the issuance of the No Contact Orders. Opp'n Mem. at 2-3. She attests that she did not stalk or harass Professors Wynne or Fera, and that instead she was the victim of harassment by them. ECF No. 132 ("Harriram Decl."), ¶¶ 6, 12-13. Plaintiff argues that Professors Wynne and Fera fabricated the allegations against Plaintiff in retaliation for her prior lawsuits. Opp'n Mem. at 11-12.

Although not framed in these terms, it appears that Plaintiff is attempting to put forward a "cat's paw" theory of liability. Under Title VII law, an employer can be held liable even if the decisionmaker who took an adverse action acted without a retaliatory motive, if in doing so the decisionmaker was manipulated by another employee "who does have such a motive and intended to bring about the adverse employment action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 51 (2d

24

Cir. 2025) (cleaned up). Assuming *arguendo* that the cat's paw theory equally applies in the Title IX context, liability can only be imputed to CUNY if it acted negligently in crediting Professor Wynne and Fera's allegations regarding Plaintiff, when it knew or reasonably should have known that they were motivated by retaliatory animus. *See Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 274 (2d Cir. 2016). Plaintiff is unable to point to evidence from which a reasonable jury could conclude that CUNY acted negligently in crediting Professors Wynne and Fera's concerns when they requested no contact orders be put into effect. To the contrary, the record shows that CUNY conducted what the reviewing state court termed a "thorough" investigation of the underlying events in 2021, which concluded that Plaintiff had sent harassing emails and letters and had falsely accused these professors of sexual misconduct. CUNY's determinations were upheld by the New York Supreme Court, and Plaintiff's federal claims related to the sexual misconduct allegations were dismissed. In light of this record, Plaintiff is unable to rebut Defendant's non-retaliatory explanation for her ban from taking in-person math classes at CUNY.

**D.     Title IX Emotional Distress Damages**

Defendants argue that Plaintiff cannot recover emotional distress damages for her Title IX claims, as the Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.* held that a plaintiff suing under the Rehabilitation Act of 1972 and the Patient Protection and Affordable Care Act ("ACA") could not recover damages for emotional distress. *See Cummings v. Premier Rehab Keller, P.L.L.C.*,

596 U.S. 212 (2022). The *Cummings* Court established that "emotional distress damages are not recoverable under [any of] the Spending Clause antidiscrimination statutes [it] consider[ed]," as federal funding recipients would not have clear notice that they may face a remedy traditionally unavailable in contract law. *Cummings*, 596 U.S. at 230.

Although *Cummings* arose in the context of the Rehabilitation Act and ACA, its reasoning applies equally to Title IX. Indeed, the Supreme Court referenced Title IX as one of the four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds that had, along with the Rehabilitation Act and ACA, been enacted pursuant to Congress's authority under the Spending Clause. *Id.* at 217-218. And the Supreme Court relied upon precedents decided under Title IX in reaching its conclusion that remedies for violations of anti-discrimination statutes enacted under the Spending Clause are limited to those traditionally available for breaches of contract. *Id.* at 217-20.

While the Second Circuit has not explicitly found that emotional distress damages under Title IX are analogously barred, most courts post-*Cummings* have found no basis to treat Title IX differently than the ACA or Rehabilitation Act. *See, e.g., Gordon v. Niagara Wheatfield Cent. Sch. Dist.*, No. 22-CV-00172 (JLS) (MJR), 2023 WL 6520216, at *6 (W.D.N.Y. Aug. 22, 2023) (collecting cases); *see also Doherty v. Bice*, 101 F.4th 169, 175 (2d Cir. 2024) (applying *Cummings* to hold that emotional distress damages were not available under Title II). Of the post-*Cummings*

26

cases Plaintiff cites in opposition, Opp'n Mem. at 7, none reached this issue. *See, e.g.*, Dkt. No. 23-CV-10447 (LGS) (S.D.N.Y.).

The Court thus holds that Plaintiff may not recover emotional distress damages on her Title IX retaliation claim, though she may still seek nominal and/or compensatory damages, as well as declaratory and/or injunctive relief. *See, e.g., Gordon*, 2023 WL 6520216, at *7 (collecting cases).

## CONCLUSION

Accordingly, Defendants' summary judgment motion is GRANTED IN PART AND DENIED IN PART. All claims against Barbera are dismissed. All of Plaintiff's claims against CUNY are dismissed, except for the Title IX claim stemming from Plaintiff's exclusion from the business school event.

It is HEREBY ORDERED that all parties shall appear for a pretrial conference on Thursday, April 23, 2026, at 11:00 am. The conference will be held in Courtroom 11B, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

The Clerk of Court is directed to terminate ECF Nos. 113 and 130, and to terminate Barbera as a defendant.

SO ORDERED.

Dated:  March 23, 2026
      New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

27